UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES BRADLEY MOORE and COLLETTE L.S. MOORE, | NO. 1:22-CV-3045-TOR |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

BEFORE THE COURT is Defendant's Motion to Dismiss (ECF No. 4). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein, the completed briefing, and is fully informed. For the reasons discussed below, Defendant's Motion to Dismiss (ECF No. 4) is granted in part and denied in part.

**BACKGROUND**

This case concerns a dispute over loan modification offers and related interest rates. ECF No. 1-1. On March 2, 2022, Plaintiffs served Defendant with

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 1

the present the complaint bearing the caption of the Superior Court of Yakima.

ECF No. 1 at 2, ¶¶ 1-2.  On April 1, 2022, Defendant removed the action to this

Court.  *Id.* at 1.  The Complaint raises the following causes of action: violation of

Washington's Consumer Protection Act ("CPA") and negligent misrepresentation.

ECF No. 1-1 at 9-10, ¶¶ 5.1-6.5.  The following facts are drawn from Plaintiffs'

complaint and are accepted as true for the purposes of the present motion.  *Chavez*

*v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

In January 2018, Plaintiffs purchased a residential property by executing a

promissory note and deed of trust.  ECF No. 1-1 at 5, ¶ 4.3.  The terms of the note

were as follows: $448,400.00 principal, 4.750% interest rate, and a $2,339.07

monthly payment.  *Id.* at 5-6, ¶ 4.3.  Subsequently, the ownership of the note and

deed was transferred to Fannie Mae and servicing of the note was assigned to

Wells Fargo.  *Id.* at 6, ¶ 4.4.  For two years, Plaintiffs made timely mortgage

payments to Wells Fargo.  *Id.*

In February 2020, Plaintiff Mr. Moore lost his job due to the COVID-19

pandemic.  *Id.*, ¶ 4.5.  On March 23, 2020, Plaintiffs contacted Wells Fargo to

inquire about COVID-19 related hardship programs.  *Id.*  On March 31, 2020,

Plaintiffs contacted Wells Fargo regarding a refinance of the mortgage.  *Id.*

Plaintiffs were approved for a three-month COVID-19 pandemic related

forbearance, but Plaintiffs submitted several payments during this time in order to not fall behind on the mortgage. *Id.*, ¶¶ 4.5-4.6.

In May 2020, Mr. Moore secured a new job and Plaintiffs requested to be taken out of forbearance. *Id.*, ¶ 4.6. Wells Fargo told Plaintiffs they could not cancel the forbearance. *Id.* Plaintiffs then requested a refinance. *Id.*, ¶ 4.7. Wells Fargo told Plaintiffs they were ineligible due to the forbearance status on the loan, but that Plaintiffs could apply for a loan modification. *Id.*

On July 13, 2020, Plaintiffs submitted a loan modification application. *Id.*, ¶ 4.8. On July 23, 2020, Plaintiffs received a letter from Wells Fargo stating that their automated valuation model calculated Plaintiffs' property value at $480,000. *Id.*, ¶ 4.9.

On August 6, 2020, Wells Fargo contacted Plaintiffs, approving the loan modification and asking whether Plaintiffs accepted the modification. *Id.*, ¶ 4.10. Plaintiffs told Wells Fargo they would need to review the documentation before agreeing. *Id.* at 7, ¶ 4.10. On or about the same date[1], Plaintiffs received the letter with the loan modification offer of a $2,528.94 monthly payment with a 3.250%

---

[1] Plaintiffs states the letter was received one day before the phone call on August 5, 2020. There are also two paragraphs labeled 4.10. These appear to be typographical errors.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ~ 3

interest rate. *Id.*, ¶ 4.10. Plaintiffs were concerned the modification extended the loan's term by 10 years and did not remove the Private Mortgage Insurance. *Id.*, ¶ 4.10. Plaintiffs repeatedly tried and failed to get ahold of their single point of contact for Wells Fargo to discuss these concerns. *Id.*

On or about November 4, 2020, Plaintiffs received a letter from Wells Fargo stating that their automated valuation model calculated the property value at $577,600. ECF No. 1-1 at 7, ¶ 4.11. On or about November 6, 2020, Plaintiffs received a letter from Wells Fargo with a loan modification offer for a trial period plan for monthly payments of $2,974.86 with a 4.75% interest rate. ECF No. 1-1 at 7, ¶ 4.12.

On or about December 23, 2020, Plaintiffs received a loan modification offer from Wells Fargo for a trial period plan for monthly payments of $2,940.16 with a 4.75% interest rate. ECF No. 1-1 at 7, ¶ 4.14.

On or about April 6, 2021, Plaintiffs received a letter from Wells Fargo stating that their automated valuation model calculated the property value at $622,100. ECF No. 1-1 at 7, ¶ 4.15. On or about April 7, 2021, Plaintiffs received a loan modification offer from Wells Fargo for a trial period plan for monthly payments of $2,995.21 with a 4.75% interest rate. ECF No. 1-1 at 8, ¶ 4.16.

On or about June 8, 2021, Plaintiffs sent a Notice of Error letter to Wells Fargo stating that the valuations of their home were grossly overinflated and

1    requesting that Wells Fargo obtain an exterior BPO, appraisal, or other more

2    accurate method than the computer-generated value.  ECF No. 1-1 at 8, ¶ 4.17.  On

3    or about July 6, 2021, Plaintiffs received a response from Wells Fargo declining

4    their request to order a new appraisal.  ECF No. 1-1 at 8, ¶ 4.18.

5         On or about October 2021, Plaintiffs sent another Notice of Error letter to

6    Wells Fargo that included two comparable market analyses from local Yakima

7    realtors listing the property in October 2021 as $528,915 and $575,000.  ECF No.

8    1-1 at 8, ¶ 4.19.

9         The Fannie Mae Servicing Guide provides that if borrower's loan-to-value

10   ratio is higher than 80%, the borrower will be offered an interest rate at the lesser

11   of the Fannie Mae Modification Interest Rate and the contractual interest rate in the

12   loan modification.  ECF No. 1-1 at 8, ¶ 4.20.  If the loan-to-value ratio is less than

13   80%, the borrower will be offered the contractual interest rate in the loan

14   modification.  *Id.*  During the relevant period, Plaintiffs had a loan-to-value ratio

15   greater than 80%.  ECF No. 1-1 at 9, ¶ 4.22.

16        Plaintiffs believe Wells Fargo overinflated the value of the home resulting in

17   Plaintiffs not being offered the Fannie Mae Modification Interest Rate in the

18   Servicing Guide.  ECF No. 1-1 at 9, ¶ 4.23.  Plaintiffs received damage to their

19   credit, lost money disputing Wells Fargo's valuations, and incurred other monetary

20   damages.  ECF No. 1-1 at 9, ¶ 4.24.

**DISCUSSION**

**A.  Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted."  A motion to dismiss for failure to state a claim will be denied if the plaintiff alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While the plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff" the plaintiff cannot rely on "conclusory allegations of law and unwarranted inferences … to defeat a motion to dismiss for failure to state a claim."  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).  That is, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements."  *Twombly*, 550 U.S. at 555.

When deciding, the Court's review is limited to the complaint, documents incorporated into the complaint by reference, and judicial notice.  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Defendant requests the Court take judicial notice of three documents: the note, deed, and

1    assignment of the deed of trust.   ECF No. 5.  While these documents appear to be

2    subject to judicial notice, the Court need not consider them where the documents

3    are not relevant to resolving the issues presented in this motion.

4        **B.  Consumer Protection Act**

5        Defendant asserts Plaintiffs failed to state a claim under the CPA by failing

6    to allege an unfair or deceptive act, causation, and any act that would affect the

7    public interest.  ECF No. 4 at 4-6.

8        The Washington Consumer Protection Act ("CPA") prohibits "[u]nfair

9    methods of competition and unfair or deceptive acts or practices in the conduct of

10   any trade or commerce."  RCW 19.86.020.  "Any person who is injured in his or

11   her business or property by a violation of RCW 19.86.020 … may bring a civil

12   action" to recover actual damages.  RCW 19.86.090.  To establish a non-*per se*

13   CPA claim, the plaintiff need not have a contractual or non-adversarial relationship

14   with the defendant.  *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27,

15   41-42 (2009).

16       To prevail on such a CPA claim, "the plaintiff must prove an (1) unfair or

17   deceptive act or practice; (2) occurring in trade or commerce; (3) public interest

18   impact; (4) injury to plaintiff in his or her business or property; [and] (5)

19   causation."  *Klem v Washington Mut. Bank*, 176 Wash. 2d 771, 782 (2013)

20   (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 7

1    2d 778, 780 (1986)).  The "trade or commerce" and "injury" elements are not in

2    dispute.  *See* ECF No. 4 at 5-6.

3        *1.  Unfair or Deceptive Act or Practice*

4        Under the first element, the plaintiff can demonstrate a deceptive act if the

5    "alleged act had the capacity to deceive a substantial portion of the public" even if

6    there was no intent to deceive.  *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 198

7    Wash. App. 594, 628 (2017) (quoting *Hangman Ridge*, 105 Wash. 2d at 785).  A

8    plaintiff can demonstrate an unfair act if the act "(1) causes or is likely to cause

9    substantial injury which (2) consumers cannot avoid, and (3) is not 'outweighed by

10   countervailing benefits.'"  *Id.* (quoting *Klem*, 176 Wash. 2d at 787).  Whether an

11   act constitutes an unfair or deceptive practice is a question of law.  *Columbia*

12   *Physical Therapy, Inc., P.S. v. Benton Franklin Orthopedic Assocs., P.L.L.C.*, 168

13   Wash. 2d 421 (2010).

14       Defendant asserts Plaintiffs allege no unfair or deceptive act where Plaintiffs

15   cannot assert a contractual right to which Plaintiffs are entitled.  *See* ECF Nos. 4, 9

16   (arguing Defendant is not required to offer a loan modification under any specific

17   terms and Plaintiffs are unable to enforce rights under Fannie Mae servicing

18   guidelines).  Plaintiffs need not assert a contractual right to state a claim under the

19   CPA.  Plaintiffs' allegation that Defendant overinflated the property value,

20   rendering them ineligible for lower interest rates for which they would otherwise

1    be eligible, has the capacity to deceive a substantial portion of the public and/or is

2    likely to cause substantial injury that Plaintiffs could not avoid without any clear

3    countervailing benefits. *Merriman*, 198 Wash. App. at 628.  Defendant dismisses

4    Plaintiffs' over-inflation allegation as a bare assertion. ECF No. 9 at 4.  To the

5    contrary, Plaintiffs allege they provided Defendant with two comparable market

6    analyses that list the property value well under Defendant's valuations, thereby

7    supporting their claim that Defendant over-inflated the property value.  ECF No. 1-

8    1 at 8, ¶ 4.19.  The Court finds that Plaintiffs adequately allege an unfair or

9    deceptive act to support their CPA claim.

10            *2.  Public Interest*

11            Under the third element, "[o]rdinarily, a breach of a private contract

12    affecting no one but the parties to the contract is not an act or practice affecting the

13    public interest." *Hangman Ridge*, 105 Wash. 2d at 790.  However, a plaintiff can

14    establish that the private "lawsuit would serve the public interest by showing a

15    likelihood that other plaintiffs have been or will be injured in the same fashion."

16    *Trujillo v. Nw. Tr. Servs.*, 183 Wash. 2d 820, 835 (2015) (internal citations

17    omitted).  To assess the public interest in a private dispute, courts are guided by

18    "(1) whether the defendant committed the alleged acts in the course of his/her

19    business, (2) whether the defendant advertised to the public in general, (3) whether

20    the defendant actively solicited this particular plaintiff, and (4) whether the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 9

plaintiff and defendant have unequal bargaining positions." *Id.* at 836.  No one

factor is dispositive.  *Id.*

Defendant's relevant services affects homeowners in Washington.  ECF No.

1-1 at 9, ¶ 5.5.  Plaintiffs can establish public interest under the aforementioned

factors in a private dispute; the allegations show the acts were committed within

the course of Defendant's business and it appears based on the allegations that

Plaintiffs and Defendant have unequal bargaining power.  *Trujillo*, 183 Wash. 2d at

836.  The Court finds that Plaintiffs adequately allege a public interest to support

their CPA claim.

     *3.  Causation*

A plaintiff can establish causation by showing "the deceptive act or practice

proximately caused injury to the plaintiff's 'business or property.'" *Panag*, 166

Wash. 2d at 63-64.  "Where a more favorable loan modification would have been

granted but for [wrongful conduct], the borrower may have suffered an injury to

property within the meaning of the CPA." *Frias v. Asset Foreclosure Servs., Inc.*,

181 Wash. 2d 412, 431-32 (2014).

Plaintiffs allege they received damage to their credit, lost money disputing

the valuations, and incurred other monetary damages during the loan modification

process that would not have occurred but for Defendant's valuations.  ECF No. 1-1

1  at 8-10, ¶¶ 4.17-4.24, 5.7.  The Court finds that Plaintiffs adequately allege

2  causation to support their CPA claim.

3      In sum, accepting the allegations as true, Plaintiffs have stated a claim for

4  relief under the CPA that is plausible on its face.  *Iqbal*, 556 U.S. at 678.

5  Defendant's motion to dismiss the CPA claim is denied.

6      **C.  Negligent Misrepresentation**

7      Defendant asserts Plaintiffs failed to state a claim for negligent

8  misrepresentation on the grounds that the complaint fails to plead the existence of a

9  false statement, Plaintiffs did not rely on any false statement, there are no

10  allegations Defendant negligently transmitted the results of the valuations, and

11  there is no proximate causation as a matter of law.  ECF No. 4 at 8-9.

12      To prove a claim for negligent misrepresentation, a plaintiff must show by

13  clear, cogent, and convincing evidence that (1) the defendant in the course of its

14  business, profession, or employment, supplies false information for the guidance of

15  others in their business transactions, (2) the defendant knew or should have known

16  the information supplied was to guide the plaintiff in their business transaction, (3)

17  the defendant was negligent in obtaining or communicating the false information,

18  (4) the plaintiff reasonably relied on the information, and (5) the false information

19  proximately caused the plaintiff damages.  *Ross v. Kirner*, 162 Wash. 2d 493, 499-

20  500 (2007) (internal citation omitted).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 11

1    Plaintiffs adequately allege Defendant supplied Plaintiffs with false

2   information about the valuations of their property and their qualification for a

3   lower interest rate, knew it was supplied for loan modification offer, was negligent

4   in obtaining or communicating the information, and the information proximately

5   caused their damages.  ECF No. 1-1 at 10, ¶¶ 4.23-4.24, 6.1-6.5.  However, beyond

6   a bare assertion, Plaintiffs do not allege they reasonably relied on the valuations, as

7   evidenced by the allegations that Plaintiffs did not accept any of the loan

8   modification offers and Plaintiffs' damages arose in part by disputing the

9   valuations.  *Id.* at 7-8, ¶¶ 4.10-4.19.  Accepting the allegations as true, the lack of

10  reasonable reliance is fatal to Plaintiffs' negligent misrepresentation claim.

11  Defendant's motion to dismiss this claim is granted.

12     **D.  Leave to Amend**

13     Rule 15(a)(2) instructs courts to "freely give leave [to amend] when justice

14  so requires."  "This policy is to be applied with extreme liberality."  *Eminence*

15  *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citation

16  and quotation marks omitted).  However, a court may deny leave to amend "due to

17  undue delay, bad faith or dilatory motive on the part of the movant, repeated

18  failure to cure deficiencies by amendments previously allowed, undue prejudice to

19  the opposing party…, and futility of amendment."  *Zucco Partners, LLC v.*

20  *Digimarc Ltd.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal citation and quotation

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 12

marks omitted).  Federal Rule of Civil Procedure 15(a) governs amendment of the pleadings prior to the court's filing of a pretrial scheduling order.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992).

Here, Rule 15(a) applies where the Court has yet to file a pretrial scheduling order in this case.  As this case is in its early stages, the Court finds that justice requires that Plaintiffs be able to freely amend their complaint.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.   Defendant's Motion to Dismiss (ECF No. 4) is **GRANTED in part** and **DENIED in part**.  Count Two for Negligent Misrepresentation is **DISMISSED**.

2.  Plaintiffs are granted leave to **AMEND** their complaint **within 21 days** of this Order.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED May 20, 2022.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS ~ 13